IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VICKI L. MANKIN                          Case No. 6:14-cv-01249-MA

                    Plaintiff,           OPINION AND ORDER

        v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION

                    Defendant.

DREW L. JOHNSON
170 Valley River Dr.
Eugene, OR 97401

JOHN E. HAAPALA
410 E. 10th Ave. Suite 240
Eugene, OR 97401

        Attorneys for Plaintiff

RONALD K. SILVER
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

SARAH L. MARTIN
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

        Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Vicki L. Martin seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g). For the reasons that follow, I affirm the final decision of the Commissioner.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for DIB on December 2, 2010, alleging disability as of September 1, 2006 due to arthritis in left knee; arthritis in right knee; and back pain. Plaintiff meets the insured status requirements for a DIB application through December 31, 2010.

Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a hearing on January 16, 2013, at which plaintiff appeared with her attorney and testified. A vocational expert, Vernon G. Arne also appeared at the hearing and testified. On March 13, 2013, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Born in 1958, plaintiff was 54 years old on the date of the ALJ's unfavorable decision. Plaintiff has a eighth grade education.

Plaintiff has past relevant work as a certified nursing assistant (CNA).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity from her alleged onset date of September 1, 2006 through her date last insured, December 31, 2010. At step two, the ALJ found that plaintiff had the following severe impairments: obesity; chronic left shoulder pain; left shoulder adhesive capsulitis; gastroesophageal reflux disease; history of alcohol abuse in remission; and mild bilateral knee degenerative joint disease. At step three, the ALJ found that plaintiff's impairment or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to light work as defined in 20 C.F.R. § 404.1567 but with the following limitations. Plaintiff can lift twenty pounds occasionally and ten pounds frequently and can stand or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. Plaintiff can occasionally reach overhead with her left, non-dominant arm and occasionally crouch and crawl. Plaintiff should avoid exposure to hazards such as unprotected heights or dangerous machinery.

At step four, the ALJ found that plaintiff is unable to perform her past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and

3 - OPINION AND ORDER

residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as first aid attendant, photocopy operator, survey worker, and mold machine operator. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from September 1, 2006 through December 31, 2010, the date last insured.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to properly evaluate plaintiff's testimony; (2) the ALJ erred in assessing the opinion of plaintiff's treating physician; (3) the ALJ erred in weighing lay testimony; and (4) because of these errors, the hypothetical posed to the vocational expert was invalid.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807

F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.  The ALJ Did Not Err in Evaluating Plaintiff's Credibility

#### A.  Standards

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform a two stage analysis. 20 C.F.R. § 404.12629. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1161

(9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

### B. Analysis

At the hearing, plaintiff testified that she has significant pain in her left shoulder and is unable to lift her left arm above her head. Tr. 36, 41. Plaintiff testified that she began to experience lower back pain in 2009 but did not seek medical treatment at that time. Tr. 38. Plaintiff also testified that she is able to walk 50 yards at a time, sit for one hour, and stand for one hour before needing to change positions. Tr. 39. Plaintiff further testified that she can lift half a gallon of milk, perform squats with her knees, and is able to walk up and down a flight of stairs. Tr. 40.

In a January 3, 2011 Activities of Daily Living (ADL) Report, plaintiff noted that she completes household chores such as vacuuming, dusting, and mopping. Tr. 144. Plaintiff also noted that she spends one hour daily preparing dinner. Tr. 143. Plaintiff indicated that she spends two hours a week grocery shopping. Tr. 145. Plaintiff further indicated that she enjoys hobbies such as bicycling, camping, and gardening, but noted that camping and gardening are more difficult given her pain. Plaintiff stated that she can walk one mile before resting and is able to lift ten pounds.

In a Pain and Fatigue Questionnaire, plaintiff noted that she experiences pain in her left shoulder, right knee and mid to lower back throughout the day. Tr. 165. Plaintiff also noted that pain medication alleviates her pain. *Id.* Plaintiff indicated that she experiences fatigue and requires a daily one hour nap. Plaintiff also indicated that she tries to push herself to stay active all day. *Id.*

In the decision, the ALJ concluded that plaintiff has medically determinable impairments that cause symptoms resulting in some limitations on work activity, but her subjective complaints and alleged limitations are not fully credible. Tr. 16.

Contrary to plaintiff's assertion, the ALJ provided three clear and convincing reasons, citing specific record evidence, which undermine her subjective complaints.

7 - OPINION AND ORDER

## 1. inconsistent with the medical evidence

Contrary to plaintiff's suggestion, the ALJ specifically found plaintiff's objective medical record is inconsistent with her subjective allegations of debilitating symptoms. Tr. 18. When the claimant's own medical record undercuts her assertions, the ALJ may rely on that contradiction to discredit the claimant. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Morgan v. Commissioner Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Carmickle*, 533 F.3d at 1161. The ALJ's findings are supported by substantial evidence in the record.[1]

As the ALJ correctly discussed, the medical findings from the relevant period, September 1, 2006 through December 31, 2010, do not corroborate plaintiff's allegations of severe debilitating pain. For example, an August 2009 x-ray of plaintiff's right knee revealed a small joint effusion with mild spurring at the insertion of the quadriceps tendon of the patella with no evidence of arthritis. Tr. 289. In an October 2007 examination, treating

---

[1] In her reply brief, plaintiff erroneously applies the *Cotton* test to argue that the objective medical evidence was sufficient to support plaintiff's pain allegations. *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986). The *Cotton* test is part of the ALJ's two step analysis in assessing plaintiff's testimony. In this case, the ALJ found that plaintiff met the *Cotton* test, and thus, in the absence of evidence of malingering, the ALJ provided three clear and convincing reasons, supported by substantial evidence to reject plaintiff's allegations. Despite plaintiff's alternative interpretation of the medical evidence, the ALJ reasonably found that plaintiff's allegations are inconsistent with the objective medical evidence. *See, Molina*, 674 F.3d at 1111.

physician Rick Hindmarsh, M.D. noted that plaintiff's left shoulder
had limited range of motion; however, by April 2008, Dr. Hindmarsh
noted that plaintiff's shoulder pain was well controlled and noted
a stiff shoulder and spine. Tr. 275, 276, 281. In September 2008,
Dr. Hindmarsh noted that plaintiff reported that her quality of
life has significantly improved due to her current dosage of pain
medications. Tr. 267. In August 2009, Dr. Hindmarsh noted slight
swelling in the right knee with full range of motion, an absence of
tenderness, and palpable crepitations. Tr. 260. Indeed, Dr.
Hindmarsh noted relatively normal objective findings relating to
plaintiff's knee and shoulder. *See generally* Tr. 240, 243, 244,
252, 254, 256, 258.

Additionally, the medical evidence dated after December 31,
2010 also fails to substantiate plaintiff's testimony regarding the
intensity of her pain. For example, a March 2011 x-ray of
plaintiff's left shoulder revealed no gross instability with type
II acromion and chronic changes consistent with tendinosis. Tr.
207. A June 2011 left knee x-ray was negative for degenerative
changes or effusion. Tr. 225. A June 2011 x-ray of plaintiff's
lumbar spine revealed mild degenerative changes. Tr. 227. Moreover,
in March 2011, examining physician Todd J. Lewis, M.D. noted a
relatively normal examination and opined that plaintiff's pain
complaints and behaviors during the examination "appear to exceed
the definable pathology." Tr. 202-206. In fact, as the ALJ noted,

plaintiff exhibited poor effort on and actively resisted physical testing during the examination. Tr. 17, 202-206.

Contrary to plaintiff's argument, treatment notes from treating physician Patrick Rask, M.D. do not support plaintiff's allegations of back pain prior to December 31, 2010. In an April 2012 treatment note, Dr. Rask noted that plaintiff *subjectively reported* aches and pains in her lower back for the past ten years. As the ALJ noted, the record shows that although plaintiff alleged experiencing back pain prior to her date last insured, plaintiff did not seek any medical treatment for her back pain prior to June 2011. Tr. 13, 228, 229. In the April 2012 treatment note, Dr. Rask noted that plaintiff fell and hurt her back recently and then received a referral from Dr. Hindmarsh to see Dr. Rask. Tr. 317.

In short, the ALJ reasonably concluded that the objective medical evidence in the record is inconsistent with the degree of plaintiff's subjective symptoms and appropriately discounted her credibility on this basis.

## 2. ADLs

The ALJ found that plaintiff's variety of activities of daily living are inconsistent with the level of disability she alleges. For example, the ALJ discussed that plaintiff is capable of extensive household chores such as laundry, vacuuming, mopping, dusting, and outdoor work. Tr. 18. Plaintiff indicated that she spends one hour cooking a full course dinner for her husband every

night. Tr. 143. The ALJ also noted that plaintiff reported that she frequently completes errands for her elderly mother and takes care of her parents including cooking and cleaning for them. Tr. 18. Furthermore, daily activities demonstrating the ability to concentrate and finish tasks indicates a "capacity that [is] transferable to a work setting." *Molina*, 674 F.3d at 1113.

Plaintiff argues that the ALJ erroneously expected plaintiff's daily activities to show a completely debilitating medical impairment, and that the ALJ penalized plaintiff for attempting to lead a normal life despite her limitations. I disagree.

While a claimant need not be completely incapacitated to be eligible for disability, here, the record shows that plaintiff's activities are fairly extensive, and plaintiff attempts to minimize the record with respect to her ADLs. For example, in August 2009, Dr. Hindmarsh noted that plaintiff had been experiencing right knee pain that began after she had been working out on a treadmill for three weeks. Tr. 260. In an August 2010 treatment note, Dr. Hindmarsh indicated that plaintiff had taken a recent trip to Japan. Tr. 238. In December 2010, Dr. Hindmarsh noted that plaintiff bikes for exercise three to four times a week. Tr. 235.

With respect to plaintiff's allegations of pain in her left shoulder, the ALJ fully considered this limitation. Tr. 18-19. The RFC finding incorporates a requirement of only occasional reaching overhead with plaintiff's left, non-dominant arm. Tr. 16.

Based on this significant evidence in the record, I conclude that the ALJ properly discredited plaintiff's testimony because her level of activity is inconsistent with the degree of impairment that she alleges. *See Berry*, 622 F.3d at 1235 (inconsistencies between self-reported symptoms and activities supported adverse credibility finding).

### 3. part-time work

Finally, the ALJ discredited plaintiff's credibility on the basis of performing part-time work after her alleged disability onset date. Tr. 17-18. Specifically, the ALJ noted that plaintiff testified that she worked three days for six hours a week as a caregiver for an elderly woman until she passed away in 2009. Plaintiff testified that she provided companionship and assisted the elderly woman in personal care management, such as bathing. Tr. 33. The record supports plaintiff's engagement in part-time work. In a December 2007 treatment note, Dr. Hindmarsh noted that plaintiff was able to continue working while on methadone, a type of pain medication. Tr. 281. In September 2009, Dr. Hindmarsh noted that plaintiff's knee pain was worse after a full day of work. Tr. 256. Moreover, in October 2009, Dr. Hindmarsh noted that plaintiff was able to continue working with her current dosage of pain medications. Tr. 251.

As the ALJ pointed out, plaintiff testified that she would have been able to perform this work full time if it was available.

12 - OPINION AND ORDER

Tr. 18, 46-47. The ALJ correctly found that "this demonstrates the capacity to perform some work." Tr. 18. Performance of job duties on a part-time basis, while not sufficient to establish work full time, can constitute a legitimate reason for discounting a claimant's assertion of disability. *See Bray v. Commissioner of Soc. Sec. Admin.,* 554 F.3d 1219, 1227 (9th Cir. 2009)(finding that ALJ properly discounted claimant's credibility when the claimant had worked and sought other work since claimant's disability onset date). I conclude this inconsistency is a clear and convincing reason for concluding that plaintiff was not wholly credible.

Although plaintiff insists on a different interpretation of the evidence, I conclude that the ALJ made logical inferences from the record to support her conclusions. Because the ALJ's interpretation is rational and is supported by substantial evidence in the record as a whole, it will not be disturbed. *See e.g., Molina,* 674 F.3d at 1111(ALJ's findings must be upheld if they are supported by reasonable inferences drawn from the record). Accordingly, I conclude that this basis combined with the ALJ's other two reasons amount to clear and convincing support backed by substantial evidence, for rejecting plaintiff's subjective symptom statements.

II.  **The ALJ Did Not Err in Assessing Treating Source Opinion**

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion

of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim*, 763 F.3d at 1160; *Orn*, 495 F.3d at 632. "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn*, 495 F.3d at 631 (internal quotations omitted)(alterations in original); 20 C.F.R. § 404.1527(c). To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If a treating or examining physician's opinion is contradicted by another physician's opinion, it may be rejected by specific and legitimate reasons. *Tonapetyan*, 242 F.3d at 1148. When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Id.* at 1149.

Plaintiff argues that the ALJ failed to provide clear and convincing reasons for rejecting Dr. Hindmarsh's opinion. In a June 29, 2011 physical capacities assessment, Dr. Hindmarsh assessed that plaintiff can sit for three hours, stand and walk for two hours each, and must lay down for two hours in an eight-hour workday. Tr. 231. Dr. Hindmarsh opined that plaintiff can lift up to five pounds; grasp; push and pull; and perform fine manipulation

14 - OPINION AND ORDER

all with the right hand only. *Id.* Dr. Hindmarsh also opined that plaintiff can occasionally reach but never bend or climb. *Id.*

Because Dr. Hindmarsh's opinion was contradicted,[2] the ALJ was required to provide specific and legitimate reasons, backed by substantial evidence, to reject his opinion. *Bayliss*, 427 F.3d at 1216. The ALJ discussed Dr. Hindmarsh's opinion and accorded the opinion "little weight" for three reasons as discussed below. Having carefully reviewed the record, I conclude that the ALJ's reasoning is supported by substantial evidence.

First, the ALJ gave "little weight" to Dr. Hindmarsh's opinion because it was assessed after plaintiff's date last insured. In a claim under Title II of the Act, a claimant has the burden to establish disability prior to the date her insurance coverage expires. 42 U.S.C. § 416(i)(3); 20 C.F.R. § 404.131. Consequently, the ALJ may only consider symptoms and limitations from the relevant time period, September 2006 through December 31, 2010, in determining whether a disability was present while plaintiff had insured status. *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1458-59 (9th Cir. 1995). Any subsequent deterioration of

---

[2] In a March 29, 2011 Physical RFC Assessment, nonexamining physician, William Backlund, M.D., opined that plaintiff could perform medium level work with a limitation to occasional overhead reaching with the left arm. Tr. 65-66. On July 7, 2011, nonexamining physician, Neal Berner, M.D. concurred with this opinion. Tr. 77-78.

impairments after plaintiff's period of eligibility is irrelevant. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

In this case, Dr. Hindmarsh completed the physical assessment form on June 29, 2011, over six months after plaintiff's date last insured of December 31, 2010. Dr. Hindmarsh did not indicate that his June 29, 2011 physical assessment was a retrospective opinion.[3] Moreover, an ALJ may give less credit or weight to opinions assessed after plaintiff's insured status has expired. *See Johnson v. Shalala,* 60 F.3d 1428, 1432-33 (9th Cir. 1995); *Lev v. Astrue*, No. C 09-05074 RS, 2010 WL 3037261, at *6, (D. Or. July 30, 2010). Indeed, plaintiff does not challenge the ALJ's reasoning for rejecting Dr. Hindmarsh's opinion on this basis.

Second, the ALJ rejected Dr. Hindmarsh's opinion because it is inconsistent with plaintiff's concurrent reports of functioning. Contrary to plaintiff's argument, when read in the context of the discussion of Dr. Hindmarsh's opinion and the ALJ's decision as a whole, it is clear that "concurrent reports of functioning" refers to plaintiff's daily activities. Tr. 16-17, 19.[4]

-------

[3] An ALJ may not solely disregard a retrospective opinion because it is retrospective. *Smith v. Bowen,* 849 F.2d 1222, 1225 (9th Cir. 1988). In this case, although Dr. Hindmarsh's opinion was not retrospective in nature, the ALJ gave two additional specific and legitimate reasons for rejecting Dr. Hindmarsh's opinion.

[4] I note that plaintiff appeared to clearly understand "concurrent reports of functioning" in challenging the ALJ's finding that plaintiff's allegations were inconsistent with her

An ALJ may reject a medical opinion that is inconsistent with a claimant's activities, including the ability to perform some work. *See Morgan,* 169 F.3d at 601-602. As the ALJ correctly found, Dr. Hindmarsh's opinion is inconsistent with plaintiff's reported activities of functioning during the relevant period. For example, as discussed previously, plaintiff reported running on a treadmill and biking three to four times a week for exercise. Tr. 235, 260. In August 2010, plaintiff reported to Dr. Hindmarsh that she had taken a recent trip to Japan. Tr. 238.    As the ALJ noted, plaintiff worked six hours a week as a caregiver to an elderly woman and spent several hours a week showing apartments for her landlord. Tr. 33, 44. In fact, in August and October 2008 and October 2009, plaintiff reported to Dr. Hindmarsh that her pain was well managed while she worked. Tr. 242, 251, 267.

Once again, plaintiff presents an alternative interpretation of the facts with respect to her daily activities; however, the ALJ's rational interpretation of her concurrent functioning as inconsistent with Dr. Hindmarsh's opinion is supported by the record. For example, as discussed above, plaintiff reported cleaning, sweeping, mopping, vacuuming, completing laundry, and gardening. Tr. 144. As discussed previously, the ALJ also noted

concurrent reports of functioning. *See* Pl. Br. (ECF No. 12) at pp. 15-17.

that plaintiff reported frequently completing errands for her elderly mother and taking care of her parents. Tr. 18.

Third, the ALJ rejected Dr. Hindmarsh's opinion on the basis that it considers limitations from plaintiff's back impairment, which was diagnosed after December 31, 2010. On June 29, 2011, plaintiff first reported low back pain, and Dr. Hindmarsh listed back pain as a medical problem in plaintiff's treatment notes. Tr. 229. Dr. Hindmarsh's physical functional assessment is also dated June 29, 2011. Tr. 231. Based on these facts, the ALJ reasonably concluded that Dr. Hindmarsh's physical assessment included limitations from plaintiff's report of back pain. Tr. 19.

Plaintiff first argues that the ALJ's inference that Dr. Hindmarsh's opinion incorporated limitations from plaintiff's back impairment is unreasonable. Specifically, plaintiff argues that her back impairment had not been fully diagnosed at the time of Dr. Hindmarsh's assessment; consequently, his opinion did not incorporate limitations from her back pain. Contradictorily, plaintiff also contends that Dr. Rask opined that plaintiff's back problems had existed at least two years prior to the expiration of her insured status, thus Dr. Hindmarsh's inclusion of limitations from her back impairment was appropriate. Plaintiff's arguments fail.

Prior to June 29, 2011, as the ALJ noted, the record indicates that plaintiff did not seek medical treatment for her complaints of

18 - OPINION AND ORDER

back pain. Tr. 13, 228. At the hearing, plaintiff testified that she did not seek any treatment for her back pain prior to December 31, 2010. Tr. 38. The ALJ properly found plaintiff's back impairment as non-severe at step two for the relevant period, September 1, 2006 through December 31, 2010. Tr. 13. To be sure, plaintiff does not challenge the ALJ's step two finding, which I conclude is supported by substantial evidence in the record. Accordingly, it is not unreasonable for the ALJ to conclude that Dr. Hindmarsh's assessment included limitations from her back impairment.[5]

Furthermore, to the extent that plaintiff indirectly challenges the ALJ's assessment of Dr. Rask's opinion, this argument is meritless. Plaintiff misstates an opinion from Dr. Rask when she asserts that Dr. Rask opined that plaintiff's back impairment existed two years prior to her date last insured. In a September 12, 2012 letter, Dr. Rask merely summarized plaintiff's subjective allegation that she "recalls" injuring her back over the past ten years with her pain worsening two years prior to December

---

[5] Contrary to plaintiff's assertion, the ALJ was not required to re-contact Dr. Hindmarsh. "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)(quoting *Smolen*, 80 F.3d at 1288)). After a careful review of the record, I conclude that there are no ambiguities or inadequacies that would trigger the ALJ's duty to develop the record.

31, 2010. Tr. 347. In this case, the only evidence that plaintiff's back impairment existed prior to December 31, 2010 is plaintiff's own testimony, which the ALJ appropriately discredited. Thus, the ALJ provided specific and legitimate reasons, supported by substantial evidence to reject Dr. Rask's opinion.

Finally, contrary to plaintiff's argument, the ALJ specifically evaluated Dr. Hindmarsh's opinion in accordance with the specific factors listed in 20 C.F.R. § 404.1527(c). Tr. 16. The ALJ rejected Dr. Hindmarsh's opinion for reasons contemplated by the regulation—namely, its inconsistency with other evidence in the record, supportability, and its irrelevance in light of the statutory requirement that plaintiff must establish disability prior to her date last insured for DIB benefits. 42 U.S.C. § 416(i)(3); 20 C.F.R. § 404.131. To be sure, plaintiff does not cite to any legal authority requiring the ALJ to provide a detailed discussion with respect to each factor listed in the regulation.

In summary, I conclude that the ALJ did not err in evaluating Dr. Hindmarsh's opinion and provided specific and legitimate reasons backed by substantial evidence in the record as a whole.

III. **The ALJ Did Not Err in Evaluating Lay Testimony**

Lay witness testimony as to how a claimant's symptoms affect her ability to work is competent evidence, which the ALJ must take into account. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Stout*, 454 F.3d at 1053; *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th

Cir. 1996). The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. *Valentine*, 574 F.3d at 694.

In a January 7, 2011 third party Function Report, plaintiff's husband, Edward Mankin noted that plaintiff has limited range of motion in her left shoulder and has difficulty walking and climbing stairs due to the arthritis in her right knee. Tr. 149. Mr. Mankin testified that plaintiff has no problems with self care. Tr. 150. Mr. Mankin also noted that plaintiff can lift ten to 15 pounds, can walk a quarter of a mile before resting, and has difficulty squatting, bending, and kneeling. Tr. 154. Mr. Mankin further noted that plaintiff spends one hour daily cooking a full dinner. Tr. 151. Mr. Mankin indicated that plaintiff spends one to two hours a month showing apartments for her landlord. Tr. 153. Her husband also noted that she spends time camping and gardening but needs help from her husband to engage in these activities. Tr. 153.

In a separate, undated letter, Mr. Mankin noted that plaintiff is no longer able to stand to wash dishes and prepares only quick simple meals. Tr. 200. Mr. Mankin also noted that he has taken over most of the household chores such as vacuum, shopping, dishes and laundry due to plaintiff's limited abilities. *Id.* Mr. Mankin further indicated that in the past five years, he has watched plaintiff's health deteriorate.

In the instant action, plaintiff argues that the ALJ failed to provide sufficient reasons to discount Mr. Mankin's January 7, 2011 Third Party Report. Plaintiff contends that although the ALJ found Mr. Mankin's Third Party Report consistent with the medical evidence and plaintiff's reports of functioning, in effect, the ALJ rejected Mr. Mankin's Third Party Report because Mr. Mankin's testimony supports an inability to perform a full range of light work. I disagree.

In the decision, the ALJ gave little weight to Mr. Mankin's undated letter, which was submitted after the hearing. The ALJ discredited Mr. Mankin's letter because it reflected plaintiff's current functioning as opposed to her functioning prior to December 31, 2010 and was not consistent with the medical evidence of record during the relevant period.[6] With respect to Mr. Mankin's January 7, 2011 Third Party Report, the ALJ found Mr. Mankin's description of plaintiff's functioning as *generally* consistent with the medical evidence and plaintiff's own reports of functioning.

In this case, the ALJ did not reject Mr. Mankin's Third Party Report. Mr. Mankin's testimony generally reflects plaintiff's reports of her own daily activities. For example, Mr. Mankin

---

[6] In her opening brief, plaintiff appears to only challenge the ALJ's assessment of Mr. Mankin's Third Party Report. However, in her reply, plaintiff appears to challenge the ALJ's assessment of Mr. Mankin's undated letter. Contrary to plaintiff's argument, I conclude that the ALJ gave two germane reasons for giving "little weight" to Mr. Mankin's letter.

described plaintiff engaging in many daily activities such as vacuuming, cleaning, gardening, and cooking full meals. Tr. 151. Similar to plaintiff's reports, Mr. Mankin also noted that plaintiff takes care of her elderly parents, including running errands for them, completing household chores for them, and taking them to medical appointments. Tr. 150. Moreover, Dr. Hindmarsh's 2007 through 2010 treatment notes are also consistent with Mr. Mankin's testimony. *See generally* Tr. 234, 235, 238, 240, 251.

Contrary to plaintiff's assertion, the ALJ's RFC finding incorporates Mr. Mankin's testimony. Consistent with Mr. Mankin's testimony, the ALJ found that plaintiff could perform a reduced level of light work. For example, Mr. Mankin noted that plaintiff could lift ten to 15 pounds; the ALJ found that plaintiff could lift ten pounds frequently and 20 pounds occasionally. Tr. 15. Similarly, the ALJ found that plaintiff is limited to occasional reaching overhead with her left non-dominant arm, which reflects Mr. Mankin's testimony that plaintiff has limited range of motion in her left arm. Tr. 15. With respect to Mr. Mankin's testimony regarding plaintiff's allegations of pain and fatigue, as discussed above, the ALJ appropriately discredited the alleged severity of plaintiff's symptoms. To be sure, the ALJ's RFC finding is *generally* consistent with Mr. Mankin's testimony.

Furthermore, Mr. Mankin's testimony adds no new allegations on behalf of plaintiff. Failure to comment on lay testimony is

23 - OPINION AND ORDER

harmless "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674, F.3d at 1117. Mr. Mankin's testimony regarding plaintiff's pain and limitations is similar to that of plaintiff, including allegations of pain in her left shoulder and difficulty lifting. As discussed above, the ALJ gave three convincing reasons, supported by substantial evidence to discount plaintiff's testimony. Specifically, the ALJ found that plaintiff's allegations of pain were inconsistent with the her activities of daily living, and this reason is applicable to Mr. Mankin's testimony. Thus, any error on the part of the ALJ in failing to discuss specific weight assessed to Mr. Mankin's testimony is harmless. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)("A decision of the ALJ will not be reversed for errors that are harmless.").

**IV.   The ALJ Did Not Err in the Hypothetical Posed to the VE**

Plaintiff contends that the ALJ's hypothetical is invalid because it did not include all of plaintiff's limitations. Plaintiff's argument is misplaced.

Contrary to plaintiff's argument, the ALJ included all of the limitations from the RFC finding in the hypothetical posed to the VE. The ALJ is required to pose a hypothetical composed of only limitations that the ALJ found credible and supported by

24 - OPINION AND ORDER

substantial evidence in the record. *Bayliss*, 427 F.3d at 1217; *see also Magallanes v. Brown*, 881 F.2d 747, 756-57 (9th Cir. 1989)(holding that it is proper for an ALJ to limit a hypothetical to restrictions supported by substantial evidence in the record). As discussed previously, the ALJ properly discredited plaintiff's allegations that she cannot stand or walk for six hours or that she must lay down during the workday. Tr. 16-17. To the extent that plaintiff indirectly challenges the ALJ's RFC finding as unsupported, plaintiff's argument fails. The medical record, specifically Dr. Hindmarsh's 2007 through 2010 treatment notes, clearly support the ALJ's RFC finding. Tr. 234, 235, 238, 240, 251. After careful review of the record, I conclude that substantial evidence supports the ALJ's RFC finding, and thus, the ALJ did not err in posing a hypothetical to the VE.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision is AFFIRMED. This action is DISMISSED.

IT IS SO ORDERED.

DATED this **22** day of JULY, 2015.

*Malcolm F Marsh*
Malcolm F. Marsh
United States District Judge